Joshua Haevernick (SBN 308380)
joshua.haevernick@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Tel: 415 882 5000 / Fax: 415 882 0300

Patrick C. Maxcy (admitted *pro hac vice*)
patrick.maxcy@dentons.com
Keith Moskowitz (admitted *pro hac vice*)
keith.moskowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000

*Attorneys for St. Paul Fire and Marine Insurance Company and Travelers Casualty and Surety Company*

Natalie M. Limber (SBN 304252)
natalie.limber@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: 213 623 9300 / Fax: 213 623 9924

Andrew D. Telles Wyatt (SBN 316740)
andrew.wyatt@dentons.com
DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, California 92660
Telephone: (949) 732-3700

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA AT SAN FRANCISCO

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>    Debtor and Debtor in Possession.<br><br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole,<br><br>    Defendant. | Case No.: 23-30564<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO WITHDRAW THE REFERENCE BY ST. PAUL FIRE AND MARINE INSURANCE COMPANY AND TRAVELERS CASUALTY AND SURETY COMPANY**<br><br>Adversary Case No. 26-03001 |

Case: 26-03001    Doc# 6    Filed: 02/08/26    Entered: 02/08/26 15:00:13    Page 1 of 25

PLEASE TAKE NOTICE that plaintiffs St. Paul Fire and Marine Insurance Company ("St. Paul") and Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company ("Travelers") (collectively, "Plaintiffs") respectfully move the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, and B.L.R. 5011-2 for entry of an order withdrawing the reference to the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") of the above-captioned adversary proceeding (the "Coverage Action") "for cause." "Cause" exists for withdrawal of the reference under 28 U.S.C. § 157(d) because, among other things, Plaintiffs have demanded a jury trial and have not consented to final adjudication by the Bankruptcy Court, and all claims in the Coverage Action are non-core. This is the exact same relief that Westport Insurance Corporation f/k/a Employers Reinsurance Corporation ("Westport") obtained less than two months ago, which The Roman Catholic Archbishop Of San Francisco (the "Debtor") did not oppose. Indeed, counsel for Debtor has indicated that the Debtor does not anticipate opposing this Motion as well.

PLEASE TAKE FURTHER NOTICE that the Motion is based on this Notice of Motion, the attached Memorandum of Law in Support of Plaintiffs' Motion to Withdraw the Reference, and all other papers, pleadings, and records on file in the Bankruptcy Action, the Coverage Action, and in Westport's Adversarial Action.

PLEASE TAKE FURTHER NOTICE that, pursuant to Bankruptcy Local Rule 5011-2(d), unless the assigned District Judge orders otherwise, within fourteen days after receiving notice of the assignment to a District Judge under Bankruptcy Local Rule 5011-2(c), any party objecting to withdrawal of the reference shall file in the District Court its opposition brief of not more than ten pages; fourteen days thereafter, any party supporting withdrawal of the reference may file a reply brief of not more than ten pages; and no hearing will be held unless the assigned District Judge orders otherwise.

/ / /

/ / /

/ / /

Case: 26-03001   Doc# 6   Filed: 02/08/26   Entered: 02/08/26 15:00:14   Page 2 of 25

| | |
|---|---|
| 1 | Dated: January 28, 2026 |
| 2 | |

Respectfully submitted,

*/s/ Andrew D. Telles Wyatt*
Andrew D. Telles Wyatt (SBN 316740)
andrew.wyatt@dentons.com
4675 MacArthur Court, Suite 1250
Newport Beach, California 92660
Telephone: (949) 732-3700

Joshua Haevernick (SBN 308380)
joshua.haevernick@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Tel: 415 882 5000 / Fax: 415 882 0300

Patrick C. Maxcy (*pro hac vice*)
patrick.maxcy@dentons.com
Keith Moskowitz (*pro hac vice*)
keith.moskowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Natalie M. Limber (SBN 304252)
natalie.limber@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: 213 623 9300 / Fax: 213 623 9924

*Attorneys for St. Paul Fire and Marine Insurance*
*Company and Travelers Casualty and Surety Company*

1  Joshua Haevernick (SBN 308380)
   joshua.haevernick@dentons.com
2  DENTONS US LLP
   1999 Harrison Street, Suite 1300
3  Oakland, California 94612
   Tel: 415 882 5000 / Fax: 415 882 0300
4
   Patrick C. Maxcy (admitted *pro hac vice*)        Natalie M. Limber (SBN 304252)
5  patrick.maxcy@dentons.com                         natalie.limber@dentons.com
   Keith Moskowitz (admitted *pro hac vice*)         DENTONS US LLP
6  keith.moskowitz@dentons.com                       601 South Figueroa Street, Suite 2500
   DENTONS US LLP                                    Los Angeles, California 90017
7  233 South Wacker Drive, Suite 5900                Tel: 213 623 9300 / Fax: 213 623 9924
   Chicago, IL 60606
8  Telephone: (312) 876-8000                         Andrew D. Telles Wyatt (SBN 316740)
                                                     andrew.wyatt@dentons.com
9  *Attorneys for St. Paul Fire and Marine Insurance*  DENTONS US LLP
   *Company and Travelers Casualty and Surety*       4675 MacArthur Court, Suite 1250
10 *Company*                                         Newport Beach, California 92660
                                                     Telephone: (949) 732-3700
11

12                    UNITED STATES BANKRUPTCY COURT

13              NORTHERN DISTRICT OF CALIFORNIA AT SAN FRANCISCO

14  In re:                                    Case No.: 23-30564

15  THE ROMAN CATHOLIC ARCHBISHOP            Chapter 11
    OF SAN FRANCISCO,
16                                            **MEMORANDUM OF POINTS AND**
           Debtor and Debtor in Possession.   **AUTHORITIES IN SUPPORT OF**
17                                            **MOTION TO WITHDRAW THE**
                                              **REFERENCE BY ST. PAUL FIRE AND**
18                                            **MARINE INSURANCE COMPANY AND**
                                              **TRAVELERS CASUALTY AND SURETY**
19                                            **COMPANY**

20  ST. PAUL FIRE AND MARINE                  Adversary Case No. 26-03001
    INSURANCE COMPANY and
21  TRAVELERS CASUALTY AND
    SURETY COMPANY,
22
    Plaintiffs,
23
    v.
24
    THE ROMAN CATHOLIC ARCHBISHOP
25  OF SAN FRANCISCO, a corporation sole,

26  Defendant.

27

28

---
Case: 26-03001    Doc# 6    Filed: 02/08/26    Entered: 02/08/26 15:00:34    Page 4 of 25

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND PRELIMINARY STATEMENT .............................................. 10

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 12

        A.      The Parties & the Policies ................................................................................... 12

        B.      The 2019 California Child Victims Act and the Claims Against the Debtor ........ 12

        C.      The Bankruptcy Case and Coverage Action ...................................................... 13

III.    LEGAL ARGUMENT .................................................................................................... 14

        A.      This Motion is Timely ........................................................................................ 15

        B.      "Cause" Exists to Withdraw the Reference. ........................................................ 15

                1.      The Claims in the Adversary Proceeding Are Non-Core. ........................ 16

                2.      The Bankruptcy Court Lacks Authority to Finally Adjudicate the
                        Coverage Action ...................................................................................... 17

                3.      Withdrawal of the Reference Would Promote Judicial Economy. ........... 19

                4.      Withdrawal of the Reference Will Not Interfere with the Uniform
                        Administration of the Bankruptcy Case. ................................................. 19

                5.      Forum Shopping Is Not an Issue. ............................................................. 20

                6.      Plaintiffs Are Entitled To and Have Demanded a Jury Trial. .................. 20

        C.      Local Rule 9015-2(b) Does Not Support Delaying Withdrawal of the
                Reference ............................................................................................................ 24

IV.     CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Appleseed's Intermediate Holdings, LLC*,
 2011 WL 6293251 (D. Del. Dec. 15, 2011)................................................................ 23

*Burdette v. Emerald Partners LLC*,
 No. C15-0816-JCC, 2015 WL 4394859 (W.D. Wash. July 16, 2015) .................................. 22

*In re Cachet Fin. Servs.*,
 652 B.R. 341 (C.D. Cal. 2023)........................................................... 16, 17, 19, 25

*Chu v. Canadian Indem. Co.*,
 224 Cal. App. 3d 86 (1990)................................................................................ 23

*In re Cinematronics, Inc.*,
 916 F.2d 1444 (9th Cir. 1990)....................................................... 16, 17, 20, 23

*CUMIS Specialty Ins. Co. v. Kaufman*,
 No. 21CV11107 (DLC), 2022 WL 4534459 (S.D.N.Y. Sept. 28, 2022)........................... 21

*In re EPD Inv. Co., LLC*,
 594 B.R. 423 (C.D. Cal. 2018)....................................................... 16, 20, 23

*Everett v. Art Brand Studios, LLC*,
 556 B.R. 437 (N.D. Cal. 2016) ....................................................... 18, 19, 25

*Exec. Bens. Ins. Agency v. Arkison*,
 573 U.S. 25 (2014) ...................................................................................... 18

*In re FMI Forwarding Co., Inc.*,
 No. 00 B. 41815 (CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ...................................... 15

*In re G–I Holdings, Inc.*,
 278 B.R. 376 (Bankr. D.N.J. 2002) ................................................................. 17

*In re GACN, Inc.*,
 555 B.R. 684 (B.A.P. 9th Cir. 2016)................................................................. 16, 17

*Gens v. Colonial Sav., F.A.*,
 No. 11-CV-05526 RMW, 2012 WL 993713 (N.D. Cal. Mar. 23, 2012)........................... 24

*Germain v. Conn. Nat'l Bank*,
 988 F.2d 1323 (2d Cir. 1993)........................................................................ 21

*Granfinanciera v. Nordberg*,
 492 U.S. 33 (1989)...................................................................................... 21

Case: 26-03001 Doc# 6 Filed: 02/08/26 Entered: 02/08/26 15:00:34 Page 6 of 25

*In re Gurga*,
    176 B.R. 196 (B.A.P. 9th Cir. 1994) ................................................................. 16

*In re Healthcentral.com*,
    504 F.3d 775 (9th Cir. 2007) ........................................................................... 24

*Hjelmeset v. Cheng Hung*,
    No. 17-CV-05697-BLF, 2018 WL 558917 (N.D. Cal. Jan. 25, 2018) ................. 24

*Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*,
    224 Cal. App. 3d 912 (1990) ........................................................................... 23

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982) .......................................................................................... 18

*Northgate Homes, Inc. v. City of Dayton*,
    126 F.3d 1095 (8th Cir. 1997) ......................................................................... 21

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993) ......................................................................... 15, 20

*Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*,
    No. 20-CV-11011 (VEC), 2021 WL 1978560 (S.D.N.Y. May 17, 2021) ............. 22

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London
    & Certain London Mkt. Companies*,
    634 B.R. 226 (S.D.N.Y. 2021) ....................................................... 15, 17, 18, 22

*In re Rosales*,
    No. 13-CV-01316-LHK, 2013 WL 5962007 (N.D. Cal. Nov. 7, 2013) ........... 19, 20

*In re Salazar*,
    No. 11CV2792 L BLM, 2012 WL 280759 (S.D. Cal. Jan. 31, 2012) ................... 15

*Sec. Farms v. Int'l Bhd. Of Teamsters, Chauffers, Warehousemen & Helpers*,
    124 F.3d 999 (9th Cir. 1997) ....................................................................... 15, 19

*Sharp v. Hawkins*,
    No. C 03-5023 CW, 2004 WL 2792121 (N.D. Cal. June 8, 2004) ....................... 24

*Simler v. Conner*,
    372 U.S. 221 (1963) .................................................................................. 21, 21

*Slocum v. New York Life Ins. Co.*,
    228 U.S. 364 (1913) ........................................................................................ 21

*Stern v. Marshall*,
    564 U.S. 462 (2011) .................................................................................. 17, 18

NOTICE OF MOTION;
MOTION TO WITHDRAW REFERENCE

Case: 26-03001    Doc# 6    Filed: 02/08/26    Entered: 02/08/26 15:00:33    Page 7 of 25

*Stonewall Ins. Co. v. Nat'l Gypsum Co.*,
    No. 86 CIV. 9671 (JSM), 1992 WL 281401 (S.D.N.Y. Sept. 25, 1992) ................................ 22

*In re Tamalpais Bancorp*,
    451 B.R. 6 (N.D. Cal. 2011) ......................................................................................... 19, 20

*In re The Roman Catholic Archbishop of San Francisco*,
    Bankruptcy Case No. 23-30564 ................................................................................... 12

*The Roman Catholic Bishop of Oakland v. Pacific Indemnity, et al. (In re: The
    Roman Catholic Bishop of Oakland)*,
    Case No.3:24-cv-00709-JSC (March 18, 2024) ......................................... 16, 18, 20

*In re Transcon Lines*,
    121 B.R. 837 (C.D. Cal. 1990) ...................................................................................... 23

*Vacation Vill., Inc. v. Clark Cty.*,
    497 F.3d 902 (9th Cir. 2007) ......................................................................................... 15

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) ....................................................................................................... 18

*Westport Insurance Corporation fka Employers Reinsurance Corporation v. The
    Roman Catholic Archbishop of San Francisco, et al.*,
    Adversary Proceeding #: 25-03070 ....................................................................... 10, 12

*Westport Insurance Corporation fka Employers Reinsurance Corporation v. The
    Roman Catholic Archbishop of San Francisco, et al.*,
    Case No. 3:25-cv-09314-WHO .................................................................................... 10

*In re Yochum*,
    89 F.3d 661 (9th Cir. 1996) .......................................................................................... 16

**Statutes**

11 United States Code
    §§ 101, *et seq.* ............................................................................................................... 13

28 United States Code
    § 157 ......................................................................................................................... 17, 19
    § 157(a) ........................................................................................................................... 14
    § 157(b)(1) ...................................................................................................................... 17
    § 157(b)(1)-(2) ............................................................................................................... 16
    § 157(b)(2) ...................................................................................................................... 16
    § 157(c)(1) ............................................................................................... 16, 17, 20, 21
    § 157(c)(2) ...................................................................................................................... 17
    § 157(d) ............................................................................................................. 10, 14, 15
    § 157(e) ........................................................................................................................... 20
    § 1334(a) ......................................................................................................................... 14
    § 1334(b) ......................................................................................................................... 14

Case: 26-03001    Doc# 6    Filed: 02/08/26    Entered: 02/08/26 15:00:13    Page 8 of 25

California Civil Procedure Code
    § 340.1 .......................................................................................................... 12

**Rules and Regulations**

Bankruptcy Local Rule
    Rule 5011-1 ................................................................................................... 12
    Rule 5011-2 ........................................................................................... 10, 14
    Rule 9015-2(b) ............................................................................................... 24

Federal Rule of Bankruptcy Procedure
    Rule 5011 ...................................................................................................... 10

Local Rule 9015-2(b) ............................................................................................ 24

**Other Authorities**

United States Constitution
    Amendment VII ................................................................................. 20, 21, 22
    Article I ......................................................................................................... 11
    Article III ....................................................................... 11, 17, 18, 19
    Article III, § I ................................................................................................ 17

NOTICE OF MOTION;
MOTION TO WITHDRAW REFERENCE

## I. INTRODUCTION AND PRELIMINARY STATEMENT

Plaintiffs St. Paul Fire and Marine Insurance Company ("St. Paul") and Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company ("Travelers") (collectively, "Plaintiffs") in the above-captioned adversary proceeding (the "Coverage Action"), hereby submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, and B.L.R. 5011-2, to withdraw the reference to the Bankruptcy Court of the Coverage Action (the "Motion").

This Coverage Action is a paradigmatic non-bankruptcy dispute involving the application of state law to the interpretation of an insurance contract. The Coverage Action involves two disagreements: (1) the effect of a pre-petition release benefiting Plaintiffs; and (2) the scope of coverage afforded to the above-captioned Debtor under various insurance contracts that Plaintiffs underwrote and issued decades ago. Plaintiffs maintain that the policies do not cover the Debtor's (actual or alleged) liability for the hundreds of sexual abuse tort claims in the wake of California's enactment of the Child Victims Act ("CVA"). The Debtor disagrees with Plaintiffs' coverage positions. Plaintiffs have sought a declaratory judgment of the parties' rights and obligations under the policies and related agreements. Withdrawal of the reference makes logical and legal sense and this motion should therefore be granted.

On October 8, 2025, Westport filed a nearly identical adversary complaint to Plaintiffs' complaint in this action. Like Plaintiffs, Westport seeks declaratory relief regarding its coverage obligations to the Debtor related to the same underlying abuse claims at issue in Plaintiffs' adversary proceeding. *Westport Insurance Corporation fka Employers Reinsurance Corporation v. The Roman Catholic Archbishop of San Francisco, et al.,* Adversary Proceeding #: 25-03070, Dkt. 1. On October 29, 2025, Westport filed a motion to withdraw reference nearly identical to the instant motion, and which the Debtor did not oppose. *Westport Insurance Corporation fka Employers Reinsurance Corporation v. The Roman Catholic Archbishop of San Francisco, et al.,* Case No. 3:25-cv-09314-WHO, Dkts. 1, 26. On December 10, 2025, Westport's motion to withdraw reference was granted. *Id.*, Dkt. 33. Westport and Plaintiffs' separate adversary proceedings involve a factual nexus such that a consistent withdrawal of reference makes sense.

Moreover, the Debtor's counsel stated that they anticipate not opposing this Motion.

The reasons cited by Westport in its motion to withdraw the reference are equally applicable here. First, much of the Coverage Action will hinge on jury issues that go far beyond a mere dispute over language. The Coverage Action claims may, but not necessarily will, include a determination of whether the Debtor was aware its clerics were sexually abusing children, what the Debtor knew about the abuse, when the Debtor knew it, how the Debtor responded, and thus whether the underlying injuries were either expected or intended. These factual disputes require a jury and withdrawal of the reference is necessary.

Second, all claims at issue in the Coverage Action lie outside of the Bankruptcy Court's Article I authority. The Bankruptcy Court may enter final judgment only on claims that arise under the Bankruptcy Code or in the Bankruptcy Case (with certain exceptions not applicable here). Plaintiffs' claims in the Coverage Action satisfy neither requirement: they involve exclusively state-law matters (including the applicability of coverage defenses under California law and the effect of the pre-petition Release) that do not arise under the Bankruptcy Code or in the Bankruptcy Case. These issues fall well outside Bankruptcy Court's jurisdiction, and the claims underlying them are private rights that must be resolved by an Article III court.

Finally, withdrawing the reference now will promote the efficiency, economy, and other policy considerations that animate the referral power. Given the noncore jury claims in this Coverage Action, the reference *must* be withdrawn eventually – and efficiency is best served by having the matter heard in the correct forum at the earliest possible opportunity. The respective adversary proceedings of Westport and Plaintiffs seek declaratory relief regarding coverage under their respective policies for the same underlying claims. Ultimately, these matters may be administratively joined. It therefore would be inefficient and non-economical to leave Plaintiffs' complaint in bankruptcy court while allowing Westport's complaint to proceed in the District Court. Withdrawing the reference now will prevent ongoing harm to the administration of the Bankruptcy Case: It will free the Bankruptcy Court from the demands of the Coverage Action that otherwise would divert time away from the Bankruptcy Court's central charge of overseeing the reorganization process and formulation of a plan. Rather than investing judicial resources on a

complex coverage matter that may outlast the Bankruptcy Case, the Bankruptcy Court can and should focus on bringing about compromises of disputed plan terms through engagement with the parties, without the distraction of the Coverage Action.

For these reasons, and for those set forth in greater detail below, the Motion should be granted and the reference withdrawn.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties & the Policies

The defendant Debtor is a Roman Catholic archdiocese with its principal place of business in San Francisco, California. Dkt. 1 at ¶ 18. Plaintiffs are both insurance companies that contracted pre-petition with the Debtor to provide both excess and primary insurance between 1972 to 1987 (the "Policies") subject to the terms, conditions, and exclusions in their respective Policies. *Id.* at ¶¶ 19-20.

### B. The 2019 California Child Victims Act and the Claims Against the Debtor

Beginning in "the late 1980s," the public became increasingly aware of "the societal problem of sexual abuse of minors," particularly within the Catholic church. *In re The Roman Catholic Archbishop of San Francisco*, Bankruptcy Case No. 23-30564, Dkt. No. 14 (the "Passarello Decl.") at ¶ 42. This eventually led to (among other things) California's enactment of legislation that revived for a set interval previously time-barred actions arising out of certain sexual abuse claims, the Child Victims Act ("CVA"). Cal. Civ. Proc. Code § 340.1. The window created by the CVA opened on January 1, 2020, and closed on December 31, 2023. *Id.*

By summer's end the following year, "approximately 537 separate, active lawsuits" had been filed and were pending against the Debtor (each, an "Underlying Claim"). Passarello Decl. at ¶ 53. All were brought "by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor." *Id.*

The lead plaintiff firms bringing the abuse claims contend that the Debtor was aware of the abuse, ratified it, and covered it up. *Westport Insurance Corporation F/K/A Employers Reinsurance Corporation*, Adv. Pro. No. 25-03070, Dkt. 3, Ex. B at p. 13. While the causes of action are sometimes framed as negligent supervision claims, the CVA plaintiffs generally allege

that the Debtor ratified the sexual abuse, refused to dismiss clergy that were known to be abusing children, and shielded clergy from responsibility for their sexual abuse. *Id.*, at p. 13. The CVA plaintiffs further allege that the Debtor refused to report the sexual abuse to civil or criminal authorities. *Id.*

Reports issued by plaintiffs' counsel identify by name well over 100 clergy associated with the Debtor who allegedly sexually abused individuals, mostly children. *Id.*, at pp. 6-7. To put this in context, there are only approximately 345 priests currently active in the Archdiocese of San Francisco. *Id.*, at p. 14.

## C. The Bankruptcy Case and Coverage Action

The volume of CVA suits quickly convinced the Debtor that it lacked "the financial means" and the "practical ability" to resolve the Underlying Claims on an *ad hoc* basis. Passarello Decl. at ¶ 54; *Cf. id.* at ¶ 20 ("Until recently, the [Debtor] has maintained financial viability while funding compensation for abuse survivors and continued litigation regarding claims of abuse."). On August 21, 2023, the Debtor commenced the above-captioned "Bankruptcy Case" by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* Dkt. 1. The Debtor's stated purpose in seeking bankruptcy relief was to marshal its distributable assets for the "fair and equitable payment" of claims, "including [those of] the survivors of abuse," while ensuring continuity of "the work of the Church … using the resources dedicated to those purposes." Passarello Decl. at ¶¶ 61-62.

On January 16, 2026, Plaintiffs initiated the Coverage Action against the Debtor. Dkt. 1. As set forth in their complaint, Plaintiffs demanded a jury trial on all issues so triable and seek a declaration that they have no obligation under the Policies to defend or indemnify the Debtor (or any affiliate, as applicable) for:

- any claims arising out of alleged injury or damage inflicted by Fr. Joseph Pritchard, as the result of a unanimous jury verdict and finding that the Debtor "by December 31, 1973, kn[e]w or ha[d] reason to know, or was … otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct" (Dkt. 1, ¶¶ 38-49);

- any claims released and barred under the Confidential Settlement Agreement and

Mutual Release, dated on or around July 2005, between the Debtor and (among others) Plaintiffs (the "Release") (Dkt. 1, ¶¶ 50-57);

- any Underlying Claim that does not involve an "accident" or injury that was neither "expected nor intended" by the Debtor (or other insured), and therefore is not an "occurrence" covered by the Policies (Dkt. 1, ¶¶ 58-65);

- any Underlying Claims that fall outside of the Policies' respective periods (Dkt. 1, ¶¶ 66-71)

- any Underlying Claims which the Debtor has not satisfied the limits of applicable primary insurance (Dkt 1, ¶¶ 72-78); and/or

- any Underlying Claims that are barred by the terms or conditions of the Policies (Dkt 1, ¶¶ 79-84).

## III.    LEGAL ARGUMENT

As noted above, the legal and factual bases supporting withdrawal of the reference of the Westport adversary proceeding are equally applicable here.  Westport's brief in support of its motion to the withdraw the reference set forth the applicable legal principles in support of withdrawal.  Those same principles apply to this Coverage Action and are stated below.

District courts are vested with original jurisdiction over bankruptcy cases but may "refer" all bankruptcy matters "to the bankruptcy judges for the district."  28 U.S.C. § 157(a); *see also id.* § 1334(a), (b).  This typically occurs automatically, as it did here, under a standing order of reference.  *See* B.L.R. 5011-1 ("[a]ll cases under Title 11 [of the United States Code] and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the Bankruptcy Judges of this District," with certain exceptions not applicable here).

However, a district court at any time, either *sua sponte* or on motion from a party, may withdraw the reference to and the matter from the bankruptcy court.  *See* 28 U.S.C. § 157(d); B.L.R. 5011-2.  Withdrawal is appropriate where a party "timely" moves for withdrawal and demonstrates "cause" to do so.  *See* 28 U.S.C. § 157(d).  This Motion meets both requirements and the reference should be withdrawn.

### A. This Motion is Timely.

Plaintiffs' Motion is "timely." Section 157(d) does not impose a "specific time limit for [withdrawal] applications." *In re FMI Forwarding Co., Inc.,* No. 00 B. 41815 (CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) (*quoting Lone Star Indust., Inc. v. Rankin County Economic Development District (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y.1993)). However, courts almost universally agree that a withdrawal request is timely if it is brought "as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms v. Int'l Bhd. Of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1007 fn. 3 (9th Cir. 1997) ("*Sec Farms*") (*quoting " In re Baldwin–United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)).

For example, withdrawal motions filed shortly after removal of the applicable proceedings from state court or an answer to the underlying complaint are timely. *See Sec. Farms,* 124 F.3d at 1007 n.3 (withdrawal motion filed six days after removal of the applicable proceeding from state court deemed timely); *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies,* 634 B.R. 226, 233 (S.D.N.Y. 2021) ("*Underwriters*") (withdrawal motion filed eight days after answer deemed timely); *In re Salazar,* No. 11CV2792 L BLM, 2012 WL 280759, at *2 (S.D. Cal. Jan. 31, 2012) (motion to withdraw reference filed approximately two months after adversary complaint and two weeks after answer deemed timely).

Here, Plaintiffs filed this Motion 12 days after filing their Complaint in the Coverage Action. This qualifies as "timely" under any applicable authority.

### B. "Cause" Exists to Withdraw the Reference.

There is also sufficient "cause" to justify withdrawal of the reference. Like "timely," the term "cause" is not defined in Section 157(d). At the outset, a district court determines whether the claims presented are "core" or "non-core" claims. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). A court then considers the following factors to determine whether "cause" exists: "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms,* 124 F.3d at 1008 (*citing In re Orion Pictures Corp.*, 4 F.3d at 1101; *see also Vacation Vill., Inc. v. Clark Cty.,* 497 F.3d 902, 914 (9th Cir. 2007) (same) (internal citations and quotations omitted)). The

"other related factors" includes the existence of a right to jury trial. *In re EPD Inv. Co., LLC*, 594 B.R. 423, 425 (C.D. Cal. 2018). Where these factors weigh in favor of withdrawal of the reference, a district court's failure to do so constitutes an abuse of discretion. *See In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990). Here, every factor compels withdrawal here.

### 1. The Claims in the Adversary Proceeding Are Non-Core.

To determine whether permissive withdrawal is appropriate, a court must first consider whether the claims asserted are "core" or "non-core." 28 U.S.C. §§ 157(b)(1)-(2), (c)(1); *In re Cachet Fin. Servs.*, 652 B.R. 341, 345 (C.D. Cal. 2023) ("To determine whether cause for permissive withdrawal exists, a district court should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." (internal citations and quotations omitted)).

"Despite the importance of the core designation to bankruptcy adjudication, no exact definition of the term exists." *In re Cinematronics*, 916 F.2d at 1449-1450 (Section 157(b)(2) "contains a laundry list of core proceedings along with the admonition that core proceedings include, 'but are not limited to, the items listed'" (internal citations and quotations omitted)).

Insurance coverage disputes—the basis of every claim in the Complaint—are not among the (non-exhaustive) core proceedings enumerated in Section 157(b)(2). Moreover, all of "the rights involved" in the Coverage Action arise from disagreements over the terms of pre-petition contracts (the Policy and Release) that "depend on state law for their resolution" and by definition "exist independent of title 11." *In re Yochum*, 89 F.3d 661, 670 (9th Cir. 1996) (internal citations and quotations omitted); *In re GACN, Inc.*, 555 B.R. 684, 698 (B.A.P. 9th Cir. 2016) ("[W]e are persuaded that [the debtor's] declaratory relief action against [its] insurer is not a core proceeding. The underlying dispute solely concerns the parties' rights and liabilities under a prepetition insurance contract, which was entered into pursuant to state law rather than as part of a bankruptcy case."). The claims in the Coverage Action are "non-core" claims. *See, e.g.*, Order re: Motions to Withdraw Reference, *The Roman Catholic Bishop of Oakland v. Pacific Indemnity, et al. (In re: The Roman Catholic Bishop of Oakland)*, Case No.3:24-cv-00709-JSC (March 18, 2024), Dkt. 29 at 4 ("The state law coverage claims [brought by a debtor against its insurers] are exclusively non-

core."); *In re Gurga,* 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994) ("Breach of contract actions are noncore claims"); *In re Cinematronics,* 916 F.2d at 1450 ("state law contract claims . . . should still not be deemed core"); *In re GACN,* 555 B.R. at 698; *In re Cachet Fin. Servs.,* 652 B.R. at 346 (debtor's coverage claims against insurance company were "exclusively non-core . . . not related to any claims that may arise under bankruptcy law"); *Underwriters,* 634 B.R. at 237 (holding that a debtor-insured's claims against its insurers for declaratory judgment and damages were non-core); *In re G–I Holdings, Inc.,* 278 B.R. 376, 382 (Bankr. D.N.J. 2002) (observing that an insurance coverage action "bears no resemblance" to a core proceeding).

### 2. The Bankruptcy Court Lacks Authority to Finally Adjudicate the Coverage Action.

If a proceeding qualifies as "core," then "[b]ankruptcy judges may hear and determine" it on a final basis subject only to ordinary appellate review. 28 U.S.C. § 157(b)(1); *but see Stern v. Marshall,* 564 U.S. 462, 469 (2011) (statutory grant of adjudicative authority for certain core claim violated Article III of the Constitution). For all "non-core" claims, the bankruptcy judge must prepare "proposed findings of fact and conclusions of law" for submission "to the district court," all parties to the proceeding may lodge objections to the bankruptcy court's proposal, and the "district judge" must enter "final … judgment" on the claim "after considering the bankruptcy judge's proposed findings and conclusions and … reviewing *de novo*" all "matters to which any party has [properly] objected." 28 U.S.C. § 157(c)(1); *but cf. id.,* § 157(c)(2) ("Notwithstanding the provisions of paragraph (1) of this subsection," a bankruptcy judge "with the consent of all … parties to the proceeding[] may … hear and determine" non-core claims). Because all the claims in the Complaint are "non-core" claims, Section 157 prevents the Bankruptcy Court from entering final judgment on the Coverage Action.

Article III likewise prevents the Bankruptcy from entering a final judgment on the Coverage Action. Article III vests the "judicial Power of the United States … in one supreme Court" and "such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const., art. III, § I. It also specifies that "the judges" exercising this power must "hold their offices during good behavior, without diminution of salary." *Stern,* 564 U.S. at 469. Bankruptcy judgeships

satisfy neither criterion. *Id.* ("[Bankruptcy] judges … enjoy neither tenure during good behavior nor salary protection."); *Everett v. Art Brand Studios, LLC,* 556 B.R. 437, 442 (N.D. Cal. 2016) ("[B]ankruptcy judges are not Article III judges.").

The Supreme Court has held that bankruptcy judges generally cannot enter final judgments on a claim unless: (a) the claim "may be removed from the jurisdiction of Article III courts" because it "involv[es] [a] so-called 'public right[],'" which in the bankruptcy context means "'the restructuring of debtor-creditor relations … at the core of the federal bankruptcy power,'" (*Exec. Bens. Ins. Agency v. Arkison,* 573 U.S. 25, 32 (2014) (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 69-71 (1982) (plurality opinion)); (b) "the parties knowingly and voluntarily consent to adjudication [of the claim] by a bankruptcy judge," (*Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 669 (2015)); or (c) "the action at issue … would necessarily be resolved in the claims allowance process." *Stern,* 564 U.S. at 499.

None of these exceptions apply here. Plaintiffs seek to vindicate private, not public, rights—here, declaratory relief claims that exist independently of the Bankruptcy Case and arise from contracts that long predate it. *Exec. Bens.,* 573 U.S. at 32; *See, e.g., Underwriters,* 634 B.R. at 234 ("Here, the claims at issue—declaratory judgment and breach of contract [arising from prepetition insurance policies issued to the debtor]—are private rights …"). Also, the Bankruptcy Court cannot adjudicate the Coverage Action by consent and it will not resolve "in the claims allowance process" because Plaintiffs do not consent for it to do so and have not filed proofs of claim in the Bankruptcy Case. Under these circumstances, the Coverage Action does not fit within any exception to the "inexorable command" of Article III and the Bankruptcy Court cannot adjudicate it. *N. Pipeline,* 458 U.S. at 59 (plurality opinion).

As a result, the Bankruptcy Court lacks the requisite statutory and constitutional authority to determine on a final basis Plaintiffs' claims in the Coverage Action. This means that the reference of the Coverage Action must be withdrawn eventually. It is a question of when, not if, and logic dictates that sooner is better than later. *Everett,* 556 B.R. at 445 ("[E]fficiency is best served by having the matter heard in the correct forum at the earliest possible opportunity"); *see also* Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland,* Dkt. 29 at 5

("If the Court were to deny the motions to withdraw the reference, 'it would result in an unnecessary layer of judicial review, which would in turn waste time and judicial resources.'" (quoting *In re Cachet Fin. Servs.,* 652 B.R. at 347)).

### 3. Withdrawal of the Reference Would Promote Judicial Economy.

The nature of the Coverage Action claims (and the Bankruptcy Court's inability to adjudicate them) plainly establishes that judicial efficiency will be enhanced and unnecessary costs and delay avoided by withdrawing the reference and centralizing all activity in a single proceeding because, as set forth above, the Bankruptcy Court cannot enter final judgment on the underlying claims consistent with Section 157 and Article III of the Constitution. *Everett*, 556 B.R. at 442 ("In assessing efficiency, the Court considers whether the issues on which the Bankruptcy Court has jurisdiction to enter final judgment predominate with respect to the underlying complaint" (*citing Sec. Farms*, 124 F.3d at 1008)); *In re Tamalpais Bancorp*, 451 B.R. 6, 11 (N.D. Cal. 2011) ("[J]udicial resources would be most efficiently used by withdrawing the reference, and …unnecessary delay and costs to the parties can be avoided by withdrawing the reference."). Here, both Westport and Plaintiffs' adversary proceedings seek nearly identical relief—their respective coverage obligations, if any, arising from the exact same claims. Judicial efficiency would be best served if both actions proceeded in the District Court.

### 4. Withdrawal of the Reference Will Not Interfere with the Uniform Administration of the Bankruptcy Case.

Plaintiffs' claims in the Coverage Action are exclusively non-core, state law claims that exist independently from the Bankruptcy Code and this Bankruptcy Case. Withdrawal therefore poses no threat to the uniform administration of the Bankruptcy Case. *In re Rosales,* No. 13-CV-01316-LHK, 2013 WL 5962007, at *7 (N.D. Cal. Nov. 7, 2013) (determining that "[u]niform administration … [wa]s the sole factor that [dis]favor[ed] withdrawing the reference" because the claim was "a core cause of action, the determination of a secured claim," that was "more properly within" the bankruptcy court's "competence" and "over which the [b]ankruptcy [c]ourt [could] enter final judgment").

### 5.    Forum Shopping Is Not an Issue.

Forum shopping is also not a concern here because there is no alternative forum.  Only the district court has the constitutional authority to conduct a jury trial and enter final judgment on the claims at issue in the Coverage Action.  *Id.* ("The prevention of forum shopping is not a concern here as only this Court has the power to enter final judgment on the claims [that] the [b]ankruptcy [c]ourt cannot" adjudicate); *Tamalpais Bancorp,* 451 B.R. 6, 12 (N.D. Cal. 2011) (similar); Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland,* Dkt. 29 at 5 (similar). As a result, all remaining factors "likewise favor withdrawal of the reference here." Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland,* Dkt. 29 at 5.

### 6.    Plaintiffs Are Entitled To and Have Demanded a Jury Trial.

The reference should be withdrawn for the additional reason that Plaintiffs have demanded a jury trial, which the Bankruptcy Court cannot oversee, for all claims in the Coverage Action.  *In re EPD Inv. Co. LLC*, 594 B.R. at 425-26 (valid jury trial right and absence of consent to jury trial in bankruptcy court constitutes "cause" to withdraw the reference).

Jury trials in bankruptcy courts generally implicate two, distinct issues.  *First*, bankruptcy courts lack the statutory authority to hold jury trials absent universal assent. 28 U.S.C. § 157(e) (a bankruptcy judge "may conduct [a] jury trial" only "with the express consent of all the parties" and only then "if specially designated to exercise such jurisdiction by the district court").  Plaintiffs do not consent to a jury trial in the Bankruptcy Court.  Therefore, if not withdrawn, this case will eventually be put before the district court.  *In re Orion Pictures Corp.*, 4 F.3d at 1101 ("If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference.").

*Second*, there is an irreconcilable conflict between Section 157(c)(1) and the Seventh Amendment.  The Seventh Amendment guarantees a jury trial right for certain claims and provides that "no fact tried by a jury[] shall be otherwise re-examined in any Court of the United States, [other] than according to the rules of common law."  U.S. Const. amend. VII.  Put another way, "[t]he Seventh Amendment does not allow another court's review of facts found by the jury with no standard of deference and with the authority to redecide those matters in the first instance." *In*

*re Cinematronics,* 916 F.2d at 1451 (*citing Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 379–80 (1913)). However, this type of re-examination is precisely what Section 157(c)(1) requires whenever a non-core matter is reviewed *de novo* by a district court. *Id.*

A district court faces a paradox. On the one hand, if a district court refuses to review bankruptcy court jury verdicts on non-core matters *de novo* it would act contrary to Section 157(c)(1). On the other hand, if the district court reviews the bankruptcy court jury verdicts it would be at odds with the Seventh Amendment. *Id.* "Faced with this problem, several courts [including the Ninth Circuit] have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy court jurisdiction, withdrawal of the case to the district court is appropriate." *Id.* (stating, "we agree with these courts" and finding that the district court's "refusal to withdraw the referral to the bankruptcy court [wa]s an abuse of discretion" where the case involved non-core claims and a jury trial right).

Here, Plaintiffs have a right to jury trial for their claims in the Coverage Action. A right to a jury trial attaches to all "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. This guarantees litigants access to a jury trial for "suits in which *legal* rights [a]re to be ascertained and determined, in contradistinction to those where equitable rights alone [a]re recognized, and equitable remedies [a]re administered." *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Parsons v. Bedford*, 28 U.S. 433, 441 (1830) (emphasis in original)).

To determine whether a "suit" involves sufficiently "legal rights," courts assess the nature of the action and the remedy requested. *E.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993). But that evaluation is not determinative, particularly in the context of claims for declaratory judgment. *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997) (noting that "declaratory relief *per se* is neither legal nor equitable."). Stated differently, "[an] action [that] is in *form* a declaratory judgment case should not obscure the [otherwise] essentially legal ***nature"*** of the claim. *Simler v. Conner*, 372 U.S. 221, 223 (1963) (emphasis added); *see also CUMIS Specialty Ins. Co. v. Kaufman*, No. 21CV11107 (DLC), 2022 WL 4534459, at *4 (S.D.N.Y. Sept. 28, 2022) (whether a declaratory judgment action is legal or

Case: 26-03001    Doc# 8    Filed: 02/03/26    Entered: 02/03/26 15:00:33    Page 21 of 25

equitable in nature typically "depends upon the traditional action that would have been brought" absent recourse to such relief).

Where declaratory judgment claims are in effect a "contract dispute," courts have repeatedly concluded that they are sufficiently legal in nature for a jury trial right to attach. *Simler,* 372 U.S. at 223 (declaratory judgment case regarding fees owed under contingent retainer agreement is legal in nature and guarantees litigant right to trial by jury under the Seventh Amendment); *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.,* No. 20-CV-11011 (VEC), 2021 WL 1978560, at *4 (S.D.N.Y. May 17, 2021) (declaratory judgment seeking to determine rights under contract are "quintessential" common law claims); *Burdette v. Emerald Partners LLC,* No. C15-0816-JCC, 2015 WL 4394859, at *3 (W.D. Wash. July 16, 2015) ("Defendants are also entitled to a jury trial on Plaintiff's claim for declaratory judgment because the issues are legal in nature.").

This includes claims for declaratory judgment relating to insurance coverage. *Underwriters,* 634 B.R. at 237 (in the context of an insurance coverage dispute, "[T]he claims here (breach of contract and declaratory judgment) are legal in nature and thus [the insurer defendants] are entitled to a jury trial."); *Stonewall Ins. Co. v. Nat'l Gypsum Co*., No. 86 CIV. 9671 (JSM), 1992 WL 281401, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]eclaratory judgment that defendant insurers are obligated to pay certain sums and indemnify [the insured] for sums within the policy limits" is "essentially legal in nature and thus a jury trial may be demanded.").

Here, all of Plaintiffs' declaratory judgment claims in the Coverage Action arise from contracts—the Policy and Release—and to a large degree present claims that an insured might bring as actions for breach: for example, an insurer (such as Plaintiffs) might seek declaratory judgment on the duty to indemnify certain claims; an insured that presented those claims for payment or coverage to its insurer might very well bring a breach action based on the insurer's refusal to indemnify. The second obviously is legal, and a jury right would attach if demanded, but the first is no less so simply because it is in the form of a claim for declaratory judgment. *See Stonewall Ins. Co.,* 1992 WL 281401, at *1.

Plaintiffs are entitled to a jury trial in the Coverage Action for their claims (all of which are non-core) and, having not consented to a jury trial in the Bankruptcy Court, "has shown cause for

withdrawal of the reference." *In re EPD Inv. Co. LLC,* 594 B.R. at 425-26; *In re Cinematronics,* 916 F.2d at 1451; *In re Appleseed's Intermediate Holdings, LLC,* 2011 WL 6293251, at *2 (D. Del. Dec. 15, 2011) (granting motion to withdraw the reference following consideration of "whether defendants are entitled to a jury trial and, if so, whether the trial is likely and whether the bankruptcy court has the power to hold such a jury trial.").

The predominance of jury issues in the Coverage Action and the high likelihood that those issues will reach a jury further demonstrates that withdrawal of the reference is necessary to preserve judicial resources. The Coverage Action is not limited to interpretation of the Policies. Rather, it will require determination of disputed factual issues, such as what the Debtor knew, when it knew it, and what it did (if anything) in response. The abuse claimants contend that the Debtor was aware of the abuse, ratified it, and covered it up.

Plaintiffs are not liable for loss caused by acts of the insured that were not accidental or for injury that was expected or intended. It will therefore be up to a jury to determine whether certain of the underlying injuries alleged were, among other things, caused by willful acts of the Debtor, *i.e.,* were not accidental, or were either expected or intended by the Debtor. *Chu v. Canadian Indem. Co.,* 224 Cal. App. 3d 86, 103 (1990) ("The issues in this case … are essentially factual in nature: 'What did [they] know, and when did [they] know it?'"); *Masonite Corp. v. Great Am. Surplus Lines Ins. Co.,* 224 Cal. App. 3d 912, 921 fn. 5 (1990) (noting that the jury determined whether the plaintiff "expected [or] intended" to discharge a pollutant).

The predominance of jury trial issues here makes it particularly unlikely that the Bankruptcy Court will be able to offer even recommended decisions on certain key matters. Absent withdrawal of the reference, little if any progress will be made towards resolving the ultimate issues in the Coverage Action because this Court will be forced to undertake a *de novo* review of the rulings of the Bankruptcy Court on the limited issues that do not involve disputed facts, effectively duplicating that work on these issues. *In re Transcon Lines*, 121 B.R. 837, 838 (C.D. Cal. 1990) ("Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation."). Under these

Case 26-03001    Doc# 8    Filed: 02/04/26    Entered: 02/04/26 15:06:13    Page 23 of 25

circumstances, ample cause to withdraw the reference exists.

### C. Local Rule 9015-2(b) Does Not Support Delaying Withdrawal of the Reference

Any argument that the Bankruptcy Court should oversee pre-trial matters (per B.L.R. 9015-2(b)) and then this Court can hold the jury trial is also unpersuasive. B.L.R. 9015-2(b) provides that "the bankruptcy court is ***permitted*** to retain jurisdiction over the action for pre-trial matters." *In re Healthcentral.com,* 504 F.3d 775, 787 (9th Cir. 2007) (emphasis added). For example, a bankruptcy court may retain jurisdiction where pre-trial proceedings "may obviate the need for a jury trial altogether" or the "bankruptcy court's knowledge of bankruptcy law and familiarity with the underlying facts of the action weigh in favor of keeping pre-trial matters with the bankruptcy judge," the local rule facilitates that outcome. *Hjelmeset v. Cheng Hung*, No. 17-CV-05697-BLF, 2018 WL 558917, at *5 (N.D. Cal. Jan. 25, 2018).

But this is not one of those cases. Here, Plaintiffs demanded a jury trial at the outset of the Coverage Action, that action centers on legal claims regarding "non-core" matters, and any delay in withdrawal will waste scarce judicial resources. Indeed, the general function of the rule— "[d]enying withdrawal in the pre-trial stages of a non-core proceeding only to accept it on a later date for the purpose of hearing the jury trial or reviewing the bankruptcy court's findings"— virtually guarantees the "unnecessary consumption of judicial resources," in the Coverage Action. *Gens v. Colonial Sav., F.A.,* No. 11-CV-05526 RMW, 2012 WL 993713, at *2 (N.D. Cal. Mar. 23, 2012).

Pre-trial discovery can also be efficiently coordinated by the district court or a magistrate judge, if deemed appropriate, as has occurred in other bankruptcy cases. *See, e.g., Sharp v. Hawkins,* No. C 03-5023 CW, 2004 WL 2792121, at *7 (N.D. Cal. June 8, 2004) ("the reference should be withdrawn so that related discovery can be coordinated before [the district court judge] or a magistrate judge"). Here, discovery should be coordinated with the Westport action pending in the District Court given the overlap of factual and legal issues. It would in fact *waste* judicial resources to try to coordinate discovery with the Westport Action should Plaintiffs' adversarial complaint stay in bankruptcy court.

At bottom, when "non-core claims completely overwhelm claims that can be finally

adjudicated in Bankruptcy Court, and the matter is more likely to eventually come before this Court," as is the case here, "efficiency is best served by having the matter heard in the correct forum *at the earliest possible opportunity*." *In re Cachet Fin. Servs.*, 562 B.R. at 350(quoting *Everett*, 556 B.R. at 445 (emphasis in original)).

## IV.    CONCLUSION

Plaintiffs' motion is timely and cause exists to withdraw the reference.  Plaintiffs therefore respectfully request entry of an order (a) withdrawing the reference of the Coverage Action to the Bankruptcy Court and (b) granting such other and further relief as is just and proper.

Dated: January 28, 2026

Respectfully submitted,

*/s/ Andrew D. Telles Wyatt*
Andrew D. Telles Wyatt (SBN 316740)
andrew.wyatt@dentons.com
4675 MacArthur Court, Suite 1250
Newport Beach, California 92660
Telephone: (949) 732-3700

Joshua Haevernick (SBN 308380)
joshua.haevernick@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1300
Oakland, California 94612
Tel: 415 882 5000 / Fax: 415 882 0300

Patrick C. Maxcy (*pro hac vice*)
patrick.maxcy@dentons.com
Keith Moskowitz (*pro hac vice*)
keith.moskowitz@dentons.com
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Natalie M. Limber (SBN 304252)
natalie.limber@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: 213 623 9300 / Fax: 213 623 9924

*Attorneys for St. Paul Fire and Marine Insurance*
*Company and Travelers Casualty and Surety Company*